[No. 58693-4.   En Banc.   June 4, 1992.]

THE STATE OF WASHINGTON, *Petitioner,* v. ZYION HANDBURGH, *Respondent.*

*John W. Ladenburg, Prosecuting Attorney, Chris Quinn-Brintnall, Senior Appellate Deputy,* and *John M. Neeb, Deputy,* for petitioner.

*Valla M. Wagner,* for respondent.

DOLLIVER, J. — The State challenges a Court of Appeals decision vacating Zyion Handburgh's juvenile court conviction for second degree robbery. At issue is what constitutes a forcible taking "in the presence of" another under RCW 9A.56.190.

On August 11, 1989, 12-year-old Chaska Leonard left her bicycle unattended outside a Tacoma recreation center while she went inside. When Leonard came back outside a short time later, she and several other children saw 12-year-old Zyion Handburgh riding off on her bicycle. Handburgh claimed Leonard had given him permission to ride the bicycle. Leonard denied that assertion. The trial court found Handburgh did not have permission to ride the bicycle.

Leonard demanded Handburgh return her bicycle. She said Handburgh retorted she would have to "suck his wee-wee" in order to get her bicycle back. Handburgh claimed he jokingly demanded that Leonard give him money. A witness said Handburgh made the statement attributed to him by Leonard.

Handburgh did not return the bicycle to Leonard. Instead, he rode it into an alleyway and dropped it into a ditch. When Leonard went to retrieve her bicycle, Handburgh threw rocks at her. She continued trying to get the bicycle and in the process pushed Handburgh in an effort to stop him from throwing rocks at her. A struggle ensued and blows were exchanged. As a result, Leonard suffered a split lip, bloody nose, and black eye. She and a friend eventually left, leaving the bicycle behind. Handburgh then abandoned the bicycle. The police later recovered the bicycle and returned it to Leonard. Handburgh was charged in Pierce County Juvenile Court with second degree robbery.

After trial, the Juvenile Court entered the following findings of fact:

IV.
That on or about August 11, 1989, in Pierce County, Chaska Leonard left her bicycle outside the recreation center on Portland Avenue. When she returned a few minutes later, she saw the defendant, Zyion Handburgh, riding on her bicycle.

V.
That the taking of the bicycle was against Chaska Leonard's will. She did not give the defendant permission to ride her bicycle.

VI.
That when Chaska Leonard asked Zyion Handburgh to return her bicycle, he refused.

VII.
That when Chaska Leonard attempted to physically retrieve her bicycle, a struggle ensued. Zyion Handburgh fought with her. He pulled her hair and hit her in the face. Such force was used by the defendant to retain possession of the bicycle.

Clerk's Papers, at 3. The Juvenile Court found Handburgh guilty of second degree robbery, concluding he

did unlawfully take personal property from the person or in the presence of Chaska Leonard, against such person's will by

the use of force and injury to that person, contrary to RCW 9A.56.210 and 9A.56.190.

Clerk's Papers, at 4.

Handburgh appealed, arguing he did not take Leonard's bicycle "in her presence" because he initially acquired the bicycle while she was in the recreation center. The Court of Appeals, Division Two, agreed, holding the taking was completed outside Leonard's presence; therefore, Handburgh's subsequent use of force did not transform the completed taking into a robbery. *State v. Handburgh*, 61 Wn. App. 763, 812 P.2d 131 (1991). The Court of Appeals reversed Handburgh's conviction.

The State made two arguments on appeal. First, the State contended, there was testimony indicating Handburgh believed he had permission to ride the bicycle. Therefore, the taking was not unlawful until Leonard demanded the return of her bicycle and the demand was refused. *Handburgh*, 61 Wn. App. at 765. Under that view of the facts, the State concluded, the *unlawful* taking followed Leonard's revocation of permission and occurred in her presence.

The Court of Appeals declined to take a view of the facts at variance with the trial court's unchallenged findings:

> Here, the trial court found that Handburgh did not [ever] have permission to ride the bicycle. In addition, it found that "the taking of the bicycle" occurred while Leonard was still inside the recreation center. Consequently, the unlawful taking did not occur in the presence of the victim. The trial court's findings do not support its conclusion that the taking was from the person or presence of the victim.

(Footnote omitted.) *Handburgh*, 61 Wn. App. at 766.

In the alternative, the State argued, regardless of when it was *initially* taken, the bicycle was *retained* by Handburgh by force against Leonard and in her presence. Under RCW 9A.56.190, the State argued, such forceful retention is robbery. The Court of Appeals rejected the State's construction of the statute. It is this argument which is before the court on review.

RCW 9A.56.190 provides:

> A person commits robbery when he unlawfully takes personal property from the person of another or in his presence

against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. *Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking*; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

(Italics ours.) *See* Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.56.190, p. 846. The State relied on the second sentence of the robbery statute to assert that a robbery occurs when a defendant *retains* possession of property by the use of force in the presence of the owner, even if the initial taking was peaceable or occurred in the owner's absence. The Court of Appeals construed the statute differently, however:

It is clear to us from the plain language of the statute that [the second sentence of RCW 9A.56.190] merely defines the type of force or fear that constitutes that element of robbery. A "taking," as another distinct element of the crime, must still occur from or in the presence of the victim. . . .

*Handburgh*, 61 Wn. App. at 766. Under the Court of Appeals' reasoning, then, a robbery can occur only when force or violence is used to obtain the property or to retain possession of it following a peaceable taking; the initial taking *must* be in the owner's presence, or it will be treated simply as a theft. In fact, the court noted, Handburgh, while not guilty of robbery, could have been charged with theft for the unlawful taking of Leonard's bicycle outside her presence and/or with assault for the later altercation. *Handburgh*, 61 Wn. App. at 766 n.2.

Division One has interpreted the robbery statute differently from Division Two. In *State v. Manchester*, 57 Wn. App. 765, 790 P.2d 217, *review denied*, 115 Wn.2d 1019 (1990), Division One held a taking can be accomplished either by forcibly acquiring the property from the owner's person or in his presence *or* by acquiring possession of property in the owner's absence and using force, violence, or threats to retain possession.

In *Manchester*, the defendant was charged with two counts of first degree robbery. In the first incident, Manchester was observed shoplifting cigarettes by a Safeway security guard who was watching from a distance. Manchester left the store with the cigarettes, whereupon the security guard confronted him. While being escorted back into the store, Manchester broke away and displayed a knife as he made his escape with the cigarettes. *Manchester*, 57 Wn. App. at 766.

In the second incident, the manager of a store observed Manchester, from 15 to 18 feet away, place several cartons of cigarettes under his coat. *Manchester*, 57 Wn. App. at 766. The store's security guard followed him out of the store, tapped him on the shoulder, and asked him what he did with the cigarettes. Manchester said he had a gun and threatened to blow the guard's brains out. After Manchester took several more steps, the guard repeated his question. Manchester then pulled an ice pick out of his pocket and displayed it, threw the cigarettes at the guard, and left. *Manchester*, 57 Wn. App. at 766.

Manchester's appeal posed two intertwined questions: (1) What is a taking "in the presence of" a property owner; and (2) what is the effect of force used *after* a taking is legally complete?

The court found it was "debatable" whether Manchester took the cigarettes in the presence of their owners, and commented:

> The word "presence" in this context has been defined as a taking of something
>> "so within [the victim's] reach, inspection, observation or control, that he could, if not overcome with violence or prevented by fear, retain his possession of it."

*Manchester*, 57 Wn. App. at 768 (quoting 4 C. Torcia, *Wharton on Criminal Law* § 473 (14th ed. 1981)).

In the first count, the distance between Manchester and the security guard was not established; in the second count, though, the manager watched Manchester from at least 15 feet away. Therefore it is arguable the cigarettes were not

within their owners' "reach, inspection, [etc.] . . .". In addition, there was nothing to suggest either victim was initially overcome with violence or prevented by fear from retaking the cigarettes. This being so, under the court's definition, Manchester was not "in the presence of" either victim when he initially took the cigarettes.

The *Manchester* court set aside the question of whether the initial taking had occurred in the owners' presence, and focused instead on Manchester's use of force to *retain* possession of the stolen goods in their owners' presence. *Manchester*, 57 Wn. App. at 769. To evaluate the effect of force used after a "legally complete" taking, the court reviewed the law of robbery in other jurisdictions and found:

> The minority view requires the use of force preceding or contemporaneous with the physical taking of property to constitute robbery. The majority of jurisdictions favor[s] a transactional view that does not consider the robbery complete until the assailant has effected his escape.

(Citations omitted.) *Manchester*, 57 Wn. App. at 770.

■ The court affirmed the convictions, adopted the transactional view, and held that when the defendant used force to retain stolen property his actions fell squarely within the provisions of RCW 9A.56.190. *Manchester*, 57 Wn. App. at 769. Implicit in the *Manchester* holding is the assumption a taking can be ongoing or continuing so that the later use of force to retain the property taken renders the actions a robbery. Stated differently, a forceful retention of stolen property in the owner's presence is the type of "taking" contemplated by the robbery statute even where the initial appropriation ensued outside the owner's presence. *See Williams v. Commonwealth*, 639 S.W.2d 786 (Ky. Ct. App. 1982) (upholding robbery conviction where employee surprised defendant in shop he was robbing, defendant fled with clothes and drew pocket knife when employee caught up with him).

At oral argument in *Handburgh*, the court posed this fact pattern: A person takes money from the cash register of a seemingly unattended convenience store, thereby committing theft. Before the thief flees, the owner comes out of the back room and confronts him. Seeing the owner, the thief

points a gun at him. Under the *Handburgh* court's construction of the robbery statute, this would amount to a theft and an assault. In our opinion, however, the theft should be considered a robbery, even if no additional property is taken; the retention of the cash, by the use or threatened use of force in the presence of the store owner, is more than theft. The robbery statute was intended to punish this very combination of crimes. 77 C.J.S. *Robbery* § 1 (1952); *see also State v. Faucett*, 22 Wn. App. 869, 871, 593 P.2d 559 (1979) (noting robbery consists of all elements of theft plus two additional requirements — property owner's presence and defendant's use of force).

The court in *Handburgh* purports to rely on the plain language of the robbery statute, but actually seems to ignore that language. The statute says a person commits robbery when "he unlawfully takes personal property . . . by the use . . . of . . . force . . .". RCW 9A.56.190. Since, under the statute, the force used can be in *retaining* the property, the *Handburgh* court's distinction between taking and force is unsupported by the statutory language. In addition, the third sentence of the statute begins "[s]uch taking", which seems to modify the immediately preceding sentence, in which *retention* by force or fear is discussed. A reasonable construction would be that the language "such taking" is referring back to an obtaining *or* a retaining of another's property, so that the Legislature intended to include "retentions" in "takings".

Moreover, as the *Manchester* court pointed out, a 1975 amendment to the robbery statute *deleted* language that said force or fear used " 'merely as a means of escape . . . does not constitute robbery.' " *Manchester*, 57 Wn. App. at 770; *see* Rem. Rev. Stat. § 2418; Laws of 1909, ch. 249, § 166, p. 938; *see also State v. Lenzi*, 165 Wash. 116, 4 P.2d 827 (1931). Such a change indicated to the *Manchester* court the intent of the Legislature to broaden the scope of a taking, for purposes of robbery, by including violence during flight immediately following the taking. *Manchester*, 57 Wn. App. at 770.

Some jurisdictions still adhere to the common law view that force must precede or be contemporaneous with a taking. *See* Annot., *Use of Force or Intimidation in Retaining Property or in Attempting To Escape, Rather Than in Taking Property, as Element of Robbery,* 93 A.L.R.3d 643, § 3 (1979); 67 Am. Jur. 2d *Robbery* § 28 (1985); 77 C.J.S. *Robbery* §§ 11, 14 (1952); *State v. Aldershof,* 220 Kan. 798, 556 P.2d 371, 93 A.L.R.3d 634 (1976); *Mason v. Commonwealth,* 200 Va. 253, 105 S.E.2d 149 (1958).

The common law notion that a defendant's acts of violence must occur either before or during the taking is widely being replaced by statutes like Washington's so that it is sufficient to sustain a robbery conviction if force is used to retain possession of the property, resist apprehension, or facilitate escape. *See* W. LaFave & A. Scott, *Criminal Law* § 8.11 (2d ed. 1986); 4 C. Torcia, *Wharton on Criminal Law* § 478, at 63 n.64 (14th ed. 1981); Annot., *supra,* 93 A.L.R.3d 643, § 4; 67 Am. Jur. 2d *Robbery* § 28 (1985); 77 C.J.S. *Robbery* §§ 11, 14 (1952). Several courts have construed such statutes to mean a peaceable taking or a taking in the owner's absence, followed by the use of force, is a robbery. *See, e.g., Williams v. Commonwealth, supra; Winborne v. State,* 455 A.2d 357 (Del. 1982); *State v. Mirault,* 92 N.J. 492, 457 A.2d 455 (1983); *People v. Anderson,* 64 Cal. 2d 633, 414 P.2d 366, 51 Cal. Rptr. 238 (1966); *People v. Kennedy,* 10 Ill. App. 3d 519, 294 N.E.2d 788 (1973); *Patterson v. Sheriff,* 93 Nev. 238, 562 P.2d 1134 (1977); *Lightner v. State,* 535 S.W.2d 176 (Tex. Crim. App. 1976).

The deviation of the Washington statute from the common law is similar to the Model Penal Code, which defines robbery to include any violence or fear that is threatened or inflicted during an attempt or commission of theft or in flight after an attempt or commission of theft. Model Penal Code § 222.1. Commentators note this deviation from the common law and broadening of the definition of robbery is warranted and desirable, because " '[t]he thief's willingness to use force against those who would restrain him in flight

suggests that he would have employed force to effect the theft had the need arisen.' " W. LaFave & A. Scott, *Criminal Law* § 8.11, at 786 (2d ed. 1986) (quoting *Model Penal Code and Commentaries* § 222.1 comment 2(b), at 104 (Official Draft & Revised Comments 1980)); 4 C. Torcia, *Wharton on Criminal Law* § 478 (14th ed. 1981).

The plain language of the robbery statute says the force used may be either to obtain *or retain* possession of the property. We hold the force necessary to support a robbery conviction need not be used in the initial acquisition of the property. Rather, the retention, via force against the property owner, of property initially taken peaceably *or* outside the presence of the property owner, is robbery.

■ The defendant also argues that even if we find a forceful retention of stolen property is robbery, his conviction should not stand because the evidence was not sufficient to show it was he who first used force. We disagree. When reviewing the sufficiency of the evidence in a criminal prosecution, we view the evidence in the light most favorable to the prosecution. *State v. Scoby*, 117 Wn.2d 55, 61, 810 P.2d 1358 (1991). The appropriate query is whether, when the evidence is so viewed, any rational trier of fact could have found the element of the crime established beyond a reasonable doubt. *State v. Baeza*, 100 Wn.2d 487, 488, 670 P.2d 646 (1983) (citing *Jackson v. Virginia*, 443 U.S. 307, 316, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)).

It was undisputed the defendant made a verbal threat to Leonard when she asked him to return her bicycle; only the nature of the threat was disputed. In addition, there was testimony the defendant threw rocks at Leonard before she ever approached him. She eventually left the scene — and her bicycle — because she was hurt and scared.

■ Any force or threat, no matter how slight, which induces an owner to part with his property is sufficient to sustain a robbery conviction. *State v. Ammlung*, 31 Wn. App. 696, 704, 644 P.2d 717 (1982) (citing *State v. Redmond*, 122 Wash. 392, 210 P. 772 (1922)). The trial court correctly

found the defendant's threats and physical violence supplied the element of force or intimidation essential to make the offense a robbery. We find the evidence was sufficient to support such a finding.

Accordingly, we reverse the decision of the Court of Appeals and affirm the defendant's conviction by the trial court.

DORE, C.J., and UTTER, BRACHTENBACH, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.