COURT OF APPEALS DIV I
2015 APR 27 AM 10: 44


# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>v.<br><br>LEONARD WHITFIELD BURGESS III,<br><br>               Appellant. | No. 70903-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: April 27, 2015 |

LEACH, J. — Leonard Burgess appeals his conviction for robbery in the first degree. He argues that because he did not use force in his initial taking of a cell phone, the State failed to prove an essential element of the charged offense. He also contends that the trial court committed instructional errors and requests correction of a scrivener's error in his judgment and sentence. We remand for correction of the judgment and sentence with instructions to add the second alternative means of committing robbery in the first degree. But sufficient evidence supports the conviction, no evidence supports Burgess's proposed lesser included instruction, and the pattern reasonable doubt instruction did not dilute the State's burden or mischaracterize the jury's role. We affirm Burgess's conviction.

## Background

In February 2013 at about 3:00 a.m., airport shuttle van driver Paul Sarkowsky sat in his van in a Safeway parking lot, waiting for a passenger. A man, later identified as Burgess, approached him and asked to use his cell phone. At first, Sarkowsky refused, but after further conversation, he agreed to let him use the phone. Sarkowsky dialed the number Burgess wished to call, handed him the phone, and turned his attention away to allow Burgess privacy. At that point, Burgess ran away with the phone. Sarkowsky chased him.

Burgess ran from the parking lot onto a street and ended up in the backyard of a house occupied by Maria Litvinenko. Sarkowsky followed Burgess into the yard. Burgess pulled out a knife and told Sarkowsky to back off. Sarkowsky told him he just wanted his phone back. The two scuffled, and Sarkowsky sustained slash wounds on his finger and chest.

Awakened by the scuffle, Litvinenko came out onto her porch and saw the two men. Sarkowsky told her to call the police, then backed out of the yard, followed by Burgess. Once Burgess left Litvinenko's yard, he ran north. Sarkowsky waited for the police.

After 15 to 20 minutes searching the area with the aid of a police dog, officers found Burgess several blocks away, under a truck in the backyard of a home. Burgess did not have either the cell phone or a knife, and officers did not find either item during their search. Sarkowsky identified Burgess as the man

who took his phone. Sarkowsky was taken to a hospital, where he received stitches in his finger and chest.

Several hours later, Sarkowsky returned to the area with his wife and used her cell phone to locate his phone. They found it between the tire of a car and the curb on the street north of Litvinenko's home.

The State charged Burgess with robbery in the first degree with a deadly weapon enhancement. The trial court rejected the defense's proposed jury instruction on the lesser included offense of theft in the third degree. The court also rejected defense's proposed reasonable doubt instruction, which omitted the optional sentence in the pattern instruction that describes "beyond a reasonable doubt" as having "an abiding belief in the truth of the charge."

The jury convicted Burgess of robbery in the first degree but did not find that he was armed with a deadly weapon. Burgess appeals.

## Analysis

First, Burgess contends that his conviction violated his due process rights because the State failed to prove an essential element of the crime as charged: that his taking of Sarkowsky's cell phone was by the use or the threat of force.

The State must prove every element of a charged crime beyond a reasonable doubt.[1] Jury instructions "'must make the relevant legal standard

---

[1] In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

manifestly apparent to the average juror.'"[2] A jury instruction not objected to becomes the law of the case.[3] And the State assumes the burden of proving each element in a to-convict instruction, even where an element increases the State's burden.[4] The presentation of evidence and argument at trial, together with the totality of the court's instructions, may reduce the possibility that the jury misconstrued its instructions.[5]

When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[6] We draw all reasonable inferences from the evidence in favor of the State.[7] A defendant challenging the sufficiency of the evidence "admits the truth of the State's evidence."[8] We do not review credibility determinations, which are for the trier of fact.[9] Thus, we defer to the jury on

---

[2] State v. Borsheim, 140 Wn. App. 357, 366, 165 P.3d 417 (2007) (internal quotation marks omitted) (quoting State v. Watkins, 136 Wn. App. 240, 241, 148 P.3d 1112 (2006)).

[3] State v. Witherspoon, 180 Wn.2d 875, 884, 329 P.3d 888 (2014) (citing State v. Willis, 153 Wn.2d 366, 374, 103 P.3d 1213 (2005)).

[4] Witherspoon, 180 Wn.2d at 884.

[5] See State v. Corbett, 158 Wn. App. 576, 592-93, 242 P.3d 52 (2010) (totality of instructions, evidence, and arguments made it clear that jury had to find separate and distinct acts for each of the guilty verdicts).

[6] State v. Hosier, 157 Wn.2d 1, 8, 133 P.3d 936 (2006).

[7] Hosier, 157 Wn.2d at 8.

[8] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[9] State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

issues of conflicting testimony, witness credibility, and persuasiveness of the evidence.[10]

The to-convict instruction required the State to prove six elements of robbery in the first degree beyond a reasonable doubt:

> (1) That on or about February 18, 2013, the defendant unlawfully took personal property from the person or in the presence of another;
> (2) That the defendant intended to commit theft of the property;
> (3) That the taking was against the person's will by the defendant's use or threatened use of immediate force, violence or fear of injury to that person;
> (4) That force or fear was used by the defendant to obtain or retain possession of the property to prevent or overcome resistance to the taking;
> (5) (a) That in the commission of these acts or in immediate flight therefrom the defendant was armed with a deadly weapon or
> (b) That in the commission of these acts or in immediate flight therefrom the defendant inflicted bodily injury; and
> (6) That any of these acts occurred in the State of Washington.

This instruction incorporated the terms of RCW 9A.56.190, which defines the crime of robbery:

> A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.[11]

---

[10] In re Pers. Restraint of Martinez, 171 Wn.2d 354, 364, 256 P.3d 277 (2011).

[11] The final sentence of this provision, not at issue here, reads, "Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear."

Burgess argues that because it is undisputed that Sarkowsky willingly handed him his phone, the State did not prove the third element of the to-convict instruction: that "the taking was against the person's will by the defendant's use or threatened use of immediate force, violence or fear of injury."

We disagree. Washington courts have adopted a "transactional" view of robbery "'that does not consider the robbery complete until the assailant has effected his escape.'"[12] RCW 9A.56.190's definition of robbery reflects this transactional view. The taking described in the statute's first sentence, which must be accomplished by force, extends to obtaining and to retaining possession of another person's property as well as to preventing or overcoming resistance to the taking.

State v. Handburgh,[13] in which our Supreme Court analyzed and adopted this transactional view, involved a juvenile defendant who took the victim's bicycle in her absence. The defendant argued that because he did not take the victim's bicycle "'in her presence,'" the State could not prove every element of robbery.[14] Our Supreme Court concluded, however, that evidence of the defendant's subsequent use of force to retain possession and overcome the victim's resistance to the taking was sufficient to support a conviction for robbery. The court held that "the force necessary to support a robbery conviction need not

---

[12] State v. Handburgh, 119 Wn.2d 284, 290, 830 P.2d 641 (1992) (quoting State v. Manchester, 57 Wn. App. 765, 770, 790 P.2d 217 (1990)).
[13] 119 Wn.2d 284, 285-86, 830 P.2d 641 (1992).
[14] Handburgh, 119 Wn.2d at 287.

be used in the initial acquisition of the property. Rather, the retention, via force against the property owner, of property initially taken peaceably or outside the presence of the property owner, is robbery."[15]

Here, after fleeing with Sarkowsky's phone, Burgess overcame Sarkowsky's resistance to the taking by slashing him with a knife. The court's instructions informed the jury that to convict Burgess of robbery in the first degree, jurors needed to find that Burgess used or threatened to use "immediate force, violence or fear of injury" and that this force or fear could be "used by the defendant to obtain or retain possession of the property [or] to prevent or overcome resistance to the taking." Under Washington law, "a taking can be accomplished either by forcibly acquiring the property from the owner's person or in his presence or by acquiring possession of property in the owner's absence and using force, violence, or threats to retain possession."[16] Under this transactional view, the State did not assume the separate burden of proving that Burgess used force in the initial taking. Here, as in Handburgh, in light of the evidence, argument, and the instructions as a whole, the State presented sufficient evidence for the jury to find that Burgess used force to retain possession of Sarkowsky's property.

Next, Burgess contends that the trial court erred by rejecting his proposed instruction on the lesser included offense of theft in the third degree. He argues

---

[15] Handburgh, 119 Wn.2d at 293.
[16] Handburgh, 119 Wn.2d at 288 (citing Manchester, 57 Wn. App. at 769).

that "affirmative evidence showed Mr. Burgess no longer had the stolen phone when force or fear was used."

A defendant "may be found guilty of an offense the commission of which is necessarily included within that with which he or she is charged in the indictment or information."[17] We review de novo a challenge to jury instructions based on an error of law.[18] But where the trial court rejects an instruction based on the facts of the case, we review the court's decision for abuse of discretion.[19]

A defendant is entitled to an instruction on a lesser included offense where (1) each element of the lesser offense is a necessary element of the charged offense (the legal prong) and (2) the evidence in the case supports an inference that only the lesser crime was committed (the factual prong).[20] The included offense must arise from the same act or transaction alleged in the charged offense.[21] When applying the factual prong of the two-part test, we view the evidence in the light most favorable to the party requesting the instruction.[22] But the evidence "must affirmatively establish the defendant's theory of the case—it is not enough that the jury might disbelieve the evidence pointing to guilt."[23]

---

[17] RCW 10.61.006.

[18] State v. Clausing, 147 Wn.2d 620, 626-27, 56 P.3d 550 (2002); State v. Hunter, 152 Wn. App. 30, 43, 216 P.3d 421 (2009).

[19] Hunter, 152 Wn. App. at 43.

[20] State v. Huyen Bich Nguyen, 165 Wn.2d 428, 434, 197 P.3d 673 (2008) (citing State v. Workman, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978)); State v. Fernandez-Medina, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000).

[21] Huyen Bich Nguyen, 165 Wn.2d at 435 (citing State v. Porter, 150 Wn.2d 732, 738-40, 82 P.3d 234 (2004)).

[22] Fernandez-Medina, 141 Wn.2d at 455-56.

[23] Fernandez-Medina, 141 Wn.2d at 456.

Here, the parties agree that theft is necessarily included in the crime of robbery, satisfying the legal prong of the test. Both the charged offense and the proposed lesser included offense instruction involve the same act or transaction. Burgess contends that his case also satisfies the factual prong because "there was affirmative evidence that Mr. Burgess had abandoned the phone before he reached the yard in which he and Mr. Sarkowsky scuffled."

We disagree. The evidence supports exactly the opposite inference: that Burgess did not abandon the phone until after his confrontation with Sarkowsky. Sarkowsky testified that he saw the phone in Burgess's hand as he fled the Safeway parking lot and that although he saw Burgess drop other items, he did not see him drop the phone during the chase. Sarkowsky also testified that when he asked Burgess why he wanted the phone, Burgess said he wanted it for money. Sarkowsky stated that Burgess told him to "back off" but did not tell him he no longer had the phone. Finally, Sarkowsky and his wife found the phone later that morning in a location north of Maria Litvinenko's backyard, in the direction Burgess fled after his confrontation with Sarkowsky. This strongly suggests that Burgess did not abandon the phone until after he used force against Sarkowsky to retain possession of it.

The evidence does not support an inference that Burgess committed only the lesser included offense of theft in the third degree. The trial court did not abuse its discretion by rejecting Burgess's proposed instruction.

Burgess also challenges the trial court's reasonable doubt instruction. He contends that the court erred by instructing the jury that "[i]f, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt."[24] Burgess argues, "By equating proof beyond a reasonable doubt with a 'belief in the truth' of the charge, the court confused the critical role of the jury." Burgess analogizes to State v. Emery,[25] in which our Supreme Court held that the prosecutor's statement during closing argument that the jury's job was to "'speak the truth'" mischaracterized the jury's role. Burgess argues, "The 'belief in the truth' language encourages the jury to undertake an impermissible search for the truth and invites the error identified in Emery."

In State v. Federov,[26] however, we recently rejected exactly this argument. Unlike the prosecutor's improper argument in Emery, the "abiding belief" language in the pattern instruction did not tell the jury that its job was to "speak the truth" or otherwise misadvise the jury about its role. Nor did it dilute the State's burden of proof. "Here, read in context, the 'belief in the truth' phrase accurately informs the jury its "'job is to determine whether the State has proved the charged offenses beyond a reasonable doubt.'"[27] The instruction accurately

---

[24] The trial court used 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 4.01, at 85 (3d ed. 2008), which includes the optional "abiding belief" language.

[25] 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

[26] 181 Wn. App. 187, 199-200, 324 P.3d 784, review denied, 181 Wn.2d 1009 (2014).

[27] Federov, 181 Wn. App. at 200 (quoting Emery, 174 Wn.2d at 760).

stated the law, and the trial court did not err in rejecting Burgess's proposed instruction that would have omitted the "abiding belief" language.

Finally, Burgess requests the correction of a scrivener's error in his judgment and sentence. The State charged Burgess with robbery in the first degree based on two alternative means. The jury could find Burgess committed the crime "when in the commission of a robbery or in immediate flight therefrom he or she is armed with a deadly weapon or inflicts bodily injury." The court's verdict form did not require that the jury specify under which alternative means it convicted Burgess. The judgment and sentence, however, includes only the deadly weapon alternative, RCW 9A.56.200(1)(a)(i). It does not include any reference to RCW 9A.56.200(1)(a)(iii), the bodily injury alternative.

To remedy a scrivener's error in a judgment and sentence that did not prejudice the defendant, we remand to the trial court for correction.[28] Although the State contends that "the error [Burgess] complains of is not an error," it "does not object to remand to correct this omission." We remand to the trial court with instructions to correct the judgment and sentence by adding RCW 9A.56.200(1)(a)(iii), the second alternative means of conviction for robbery in the first degree.

## Conclusion

Because the evidence supports Burgess's conviction, but not Burgess's proposed lesser included offense instruction, and the court's reasonable doubt

---

[28] State v. Moten, 95 Wn. App. 927, 929, 934-35, 976 P.2d 1286 (1999).

instruction did not misadvise the jury or dilute the State's burden of proof, we affirm. We remand to the trial court with instructions to correct a scrivener's error in Burgess's judgment and sentence by adding RCW 9A.56.200(1)(a)(iii), the "bodily injury" means of conviction for robbery in the first degree.

Leach, J.

WE CONCUR:

Appelwick, J.                    Cox, J.