IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32759-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TREVOR W. MYERS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — We ask whether one who brandishes a gun may be convicted of robbery as a principal when a companion possesses the stolen goods at the moment of the brandishment. Consistent with prior case law, we answer the question in the affirmative. We affirm the conviction of Trevor Myers for first degree robbery. We also affirm Myers' community custody conditions.

FACTS

Trevor Myers and Jennifer Kiperash visited the Shadle Park Walmart chain store in north Spokane. At the time of the shopping excursion, Jennifer Kiperash was married

to Myers and was also known as Jennifer Myers. We refer to her as Kiperash in this opinion.

Jennifer Kiperash and Trevor Myers entered the Walmart store electronics department, where Myers removed a pair of walkie-talkies from a magnetically locked peg. The two ambled to other parts of the store and bypassed the check-out counters. Kiperash exited the store, but as she passed through the security sensor, a magnetized tag on the walkie-talkies triggered the store's security sensor alarm. Myers followed behind Kiperash by five to ten feet and also exited the Walmart store.

The Walmart store alarm alerted store Assistant Manager Kari Cooper. Cooper confronted Jennifer Kiperash as the latter proceeded into the store vestibule, and Cooper asked Kiperash for her purchase receipt. Kiperash ignored Cooper and continued toward the store parking lot at a hurried pace. Trevor Myers suddenly inserted himself between Cooper and Kiperash. Myers, while twenty feet from Cooper, pointed what looked like a black handgun at Cooper and said either "Don't do it" or "Back the fuck up." Report of Proceedings (RP) at 45, 98. Cooper raised her hands and fled into the store where she phoned 9-1-1. Walmart patrons, who witnessed the encounter, saw Kiperash enter the passenger side of a tan sedan in the parking lot and Myers enter the driver side of the sedan before the car sped away.

Spokane Patrol Officers James Erickson and Jeremy McVay heard dispatch describe a getaway vehicle used after a robbery at the Shadle Park Walmart. Within

2

seconds, the officers spotted a vehicle matching the car description. The car journeyed south on Ash Street. Officer Erickson drove the marked police vehicle behind the getaway vehicle and a chase, reaching speeds of eighty miles per hour, ensued. The chase ended when Officer Erickson performed a maneuver that resulted in the getaway car crashing into a utility pole and residential fence in Spokane's lower South Hill.

Trevor Myers exited the car but only ran twenty yards before Officer James Erickson apprehended him. Officers also arrested Jennifer Kiperash at the scene. An officer recovered, from the getaway car, two new walkie-talkies matching those sold at Walmart and batteries befitting the walkie-talkies. Law enforcement officers also found a box of .357 caliber ammunition in a backpack in the car and a second box in the yard near the crash. When arresting Myers, Officer Erickson confiscated an empty black gun holster from Myers' front pants pocket. Law enforcement never found a gun.

## PROCEDURE

The State of Washington charged Trevor Myers with first degree robbery and attempt to elude a police vehicle. At the conclusion of the trial evidence, the trial court instructed Myers' jury on the elements of first degree robbery. Jury instruction 11 read:

> To convict the defendant of the crime of robbery in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about July 1, 2013, the defendant unlawfully took personal property from the person or in the presence of another;
> (2) That the defendant intended to commit theft of the property;

(3) That the taking was against the person's will by the defendant's use or threatened use of immediate force, violence, or fear of injury to that person or to the person of another;

(4) That force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking;

(5) That in the commission of these acts or in the immediate flight therefrom the defendant displayed what appeared to be a firearm or other deadly weapon; and

(6) That any of these acts occurred in the State of Washington.

Clerk's Papers (CP) at 87.

Initially the State did not offer an instruction on accomplice liability, but during closing arguments asked for a supplemental instruction. The trial court denied the State's request for a late instruction on accomplice liability. The jury found Myers guilty of both first degree robbery and attempt to elude a police vehicle. Myers appeals only the former conviction.

The trial court sentenced Trevor Myers to a total of 171 months of confinement and imposed community custody conditions including:

While on community custody, the defendant shall: . . . (4) not consume controlled substances except pursuant to lawfully issued prescriptions; (5) not unlawfully possess controlled substances while on community custody.

CP at 126. The trial court also ordered that Myers shall not "use or possess[] . . . Marijuana . . . or products containing Tetrahydrocannabionol [sic] (THC)." CP at 126.

## LAW AND ANLAYSIS

On appeal, Trevor Myers contends: (1) the evidence did not support a conviction

4

for first degree robbery because he no longer possessed the stolen property when he threatened the clerk, and (2) the trial court imposed community custody conditions beyond its statutory authority. The State argues that the evidence was sufficient to support the conviction, but agrees that the community custody conditions should be modified. We agree with the State. We affirm the conviction but remand for modification of the community custody conditions.

## First Degree Robbery

Trevor Myers challenges the sufficiency of the evidence for his conviction for first degree robbery. We repeat the familiar principles of sufficiency of evidence challenges. Evidence is sufficient if a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). Both direct and indirect evidence may support the jury's verdict. *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986). This court draws all reasonable inferences in favor of the State. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). Only the trier of fact weighs the evidence and gauges the credibility of witnesses. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989). The State assumes the burden of proving otherwise unnecessary elements of the offense when such elements are included without objection in a jury instruction. *State v. Willis*, 153 Wn.2d 366, 374-75, 103 P.3d 1213 (2005).

The jury convicted Trevor Myers of first degree robbery under RCW 9A.56.200.

5

Under RCW 9A.56.190, the general definition of robbery states that:

> A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

Any force or threat, no matter how slight, which induces an owner to part with his property is sufficient to sustain a robbery conviction. *State v. Handburgh*, 119 Wn.2d 284, 293, 830 P.2d 641 (1992).

Washington follows a transactional approach to robbery. *State v. Johnson*, 155 Wn.2d 609, 610-11, 121 P.3d 91 (2005). The force or threat of force must relate to obtaining or retaining possession. *Johnson*, 155 Wn.2d at 611. For first degree robbery under RCW 9A.56.200, one could be "armed with a deadly weapon" either "[i]n the commission of a robbery or of immediate flight therefrom." Thus, one may be guilty of robbery if he or she obtains property through threat of force or retains possession while in immediate flight through threat of force. In either case, the threat of force is part of the taking. *State v. Witherspoon*, 180 Wn.2d 875, 884-85, 329 P.3d 888 (2014).

Trevor Myers argues that, because he did not retain possession of the walkie-talkie set he removed from the Walmart peg, he could not have used force or fear to retain possession as required by RCW 9A.56.190. He claims that, because Jennifer Kiperash toted the walkie-talkies when he threatened force, he did not utter his threat to retain

6

possession. He contends that he must have held possession of the pilfered goods at the time of his threat for the evidence to support a conviction for robbery as a principal. According to Myers, the evidence only supports his conviction as an accomplice. Thus, the omission of a jury instruction on accomplice liability defeated the prosecution.

Consistent with his contentions, Trevor Myers emphasizes the language of jury instruction 11 and argues that, based on the instruction, the State needed to establish that he used force to prevent or overcome resistance to "his" taking of the merchandise. We observe that the jury instruction does not limit guilt to an instance when the force allowed "his" or Myers' taking of the goods. Subsection 4 of the instruction listed one of the elements as:

> (4) That force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking. . . .

CP at 87. One may read the instruction as applying to force used so that a colleague may retain possession of the pilfered merchandise.

Trevor Myers' appeal fails because the law does not demand he physically carry the pilfered merchandise at the exact time he threatened force in order to satisfy the elements of robbery as a principal. Under the transactional view of robbery, use of force does not need to be contemporaneous with the physical taking of property, and the robbery is not complete until the assailant has affected escape. *State v. Handburgh*, 119 Wn.2d 284, 290 (1992); *State v. Manchester*, 57 Wn. App. 765, 770, 790 P.2d 217

7

(1990). Under this view, the evidence could convict Myers of robbery as long as his threat of force procured the retention of the goods.

Possession is "[t]he fact of having or holding property in one's power; the exercise of dominion over property." BLACK'S LAW DICTIONARY 1351 (10th ed. 2014). By aiming a gun at Kari Cooper, Trevor Myers employed compulsion to allow Jennifer Kiperash to remove the stolen walkie-talkie set to their getaway car. Under these facts, a reasonable jury could conclude that Kiperash and Myers shared possession of the walkie-talkies because the couple operated together to exercise dominion over the property. Myers also held actual possession of the walkie-talkies when they were on the floor of the car he drove.

*State v. Witherspoon*, 180 Wn.2d 875 (2014) and *State v. Truong*, 168 Wn. App. 529, 277 P.3d 74 (2012) control this appeal. In the former case, Alvin Witherspoon and his accomplice entered a house and stole several objects. The victim arrived home to find an unknown car parked in her driveway, so she exited her car and approached the vehicle. Alvin Witherspoon appeared from the side of the house with his left hand behind his back. The victim asked Witherspoon what he had behind his back, and he replied that he had a pistol. The victim saw no stolen objects in Witherspoon's possession. Witherspoon joined his accomplice in the car and drove away. As they departed, the victim noticed her belongings in the back of the car. Witherspoon challenged his robbery conviction for sufficiency of the evidence. Our Supreme Court affirmed under the

8

transactional view of robbery. The evidence did not need to place any of the stolen property in the hands of or on the person of Witherspoon.

Another similar case is *State v. Truong*, 168 Wn. App. 529 (2012). A quintet of women boarded a Seattle bus, on which the victim listened to music on an MP3 player. Sindy Truong, a member of the group, grabbed the music player and handed it to another group member. Truong and a companion attacked the victim when he confronted the five women. Truong challenged her first degree robbery conviction on sufficiency of the evidence grounds. She claimed that no evidence supported the force element since she earlier passed the player to another before using any force. We rejected the argument under the transactional view of robbery.

Trevor Myers also argues insufficiency of evidence because he did not employ force when he took the walkie-talkies from the merchandising rack. Nevertheless, under RCW 9A.56.190, one commits robbery if he uses force to retain possession of the goods. Instruction 11 restated this provision of the robbery statute. Use of force to retain property that was initially taken peaceably is robbery. *State v. Handburgh*, 119 Wn.2d at 293 (1992).

Community Custody Conditions

Trevor Myers contends that the community custody condition that prohibits his use of marijuana was not authorized by statute. A trial court may only impose sentences that statutes authorize. *State v. Albright*, 144 Wn. App. 566, 568, 183 P.3d 1094 (2008).

No. 32759-1-III
*State v. Myers*

We disagree.

The trial court lacks authority to impose a community custody condition unless authorized by the legislature. *State v. Warnock*, 174 Wn. App. 608, 611, 299 P.3d 1173 (2013). We review a trial court's statutory authority to impose a particular community custody condition de novo. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

The prohibitions imposed on Trevor Myers during community custody suffer from inconsistency, due in large part to standardized sentencing forms. One prohibition extends to consumption of controlled substances except with a lawful prescription. A second prohibition covers unlawful possession of controlled substances, but does not specifically except substances with a prescription. One might read the second prohibition as eschewing a ban on controlled substances with a prescription since the prohibition only encompasses unlawful possession. The third prohibition proscribes use or possession of marijuana or products containing THC and does not mention a prescription.

RCW 9.94A.703 controls conditions a court must or may impose on one released into community custody. Trevor Myers contends that the condition prohibiting him from use or possession of marijuana exceeds any statutory authority because it does not contain the exception for prescription use found in RCW 9.94A.703(2)(c). The statute's section reads:

10

> When a court sentences a person to a term of community custody, the court shall impose conditions of community custody as provided in this section.
>
> . . . .
>
> (2) **Waivable conditions.** Unless waived by the court, as part of any term of community custody, the court shall order an offender to:
>
> . . . .
>
> (c) Refrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions.

Myers also argues that the prohibition is not crime related and, thus, not authorized by RCW 9.94A.703(3)(f). This statutory provision declares:

> (3) **Discretionary conditions.** As part of any term of community custody, the court may order an offender to:
>
> . . . .
>
> (f) Comply with any crime-related prohibitions.

The community custody condition prohibiting use and possession of marijuana survives, under RCW 9.94A.703(2)(c), if marijuana is a "controlled substance," or, under RCW 9.94A.703(3)(f), if marijuana was crime-related. Since Trevor Myers' convictions did not relate to use or possession of marijuana, marijuana must be a controlled substance for the community custody condition in Myers' sentence to survive.

Despite the state's legalization of use of small amounts of marijuana, marijuana remains a controlled substance, particularly in light of federal law still banning marijuana. RCW 69.50.101(d) defines a "controlled substance" as "a drug, substance, or immediate precursor included in Schedules I through V as set forth in federal or state laws, or federal or commission rules." Marijuana is a Schedule I drug under the United

11

States Controlled Substance Act. 21 U.S.C. § 812. Therefore, marijuana, as a community custody condition can survive because it is a "controlled substance."

RCW 9.94A.703(2)(c) excepts, from the community custody prohibition, the use of a "controlled substance" to the extent the use is pursuant to a prescription. This exception does not control because one can never obtain a prescription for marijuana use. RCW 69.50.308. Even in the context of medical marijuana, the user obtains an "authorization," not a prescription, from a health care provider. RCW 69.51A.030(2)(a).

## CONCLUSION

We affirm Trevor Myers' conviction for first degree robbery and his sentence, including the community custody condition disallowing use or possession of marijuana and products containing THC.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.

12