**FILED**
**NOVEMBER 25, 2025**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40311-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PARKER M. BACHTOLD, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

COONEY, J. — Parker Bachtold pleaded guilty to murder in the first degree, robbery in the first degree, theft of a motor vehicle, juvenile in possession of a firearm, and two counts of theft of a firearm. Mr. Bachtold appeals, arguing (1) his guilty plea to robbery in the first degree should be vacated because there was an insufficient factual basis to support the plea and his attorney was ineffective in stipulating to an insufficient factual basis for the plea; (2) his guilty pleas to the remaining charges were not entered into knowingly and voluntarily due to the invalidity of the robbery plea and an incorrect offender score; and (3) the victim penalty assessment (VPA) and DNA collection fee were erroneously imposed. We disagree with Mr. Bachtold's first two arguments, agree

No. 40311-4-III
*State v. Bachtold*

with his third argument, and remand for the limited purpose of striking the VPA and DNA collection fee from the judgment and sentence.

## BACKGROUND

The following facts are taken from the "Statement of Arresting Officer and Preliminary Finding of Probable Cause" (probable cause affidavit). Clerk's Papers (CP) at 18-25.

On October 5, 2014, Patrick Altus was found "dead on the floor inside his residence." CP at 18. Mr. Bachtold and Mr. Altus' niece, S.E.A., [1] for whom Mr. Altus had custody, resided with Mr. Altus. When Mr. Altus was found, Mr. Bachtold's and S.E.A.'s "whereabouts" were "unknown," and the truck Mr. Altus had recently purchased was missing. CP at 19. The next day, Mr. Altus' truck was located at a motel in Oregon. Mr. Bachtold was arrested on his departure from a motel room. Two firearms were later discovered in the motel room.

S.E.A. told law enforcement that "[Mr. Bachtold] shot [Mr. Altus] on Tuesday (09/30/2014) night at about 22:00." CP at 22. S.E.A. reported hearing a second gunshot, before Mr. Bachtold "came into her room holding a pistol and told her he had just shot

_____

[1] To protect the privacy interests of S.E.A., we use initials throughout this opinion. Gen. Order of Division III, *In re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses*, (Wash. Ct. App. June 18, 2012), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2012_001&div=III

2

[Mr. Altus] and that he had it coming." CP at 22. S.E.A. stated Mr. Bachtold told her to get her stuff, and they loaded clothes, camping gear, fishing poles, and a "bunch of stuff" in the truck. CP at 22. S.E.A. stated she told Mr. Bachtold "they should call the police," and he "told her no and pointed [the] pistol at her." CP at 22. They departed for Oregon the next morning.

Mr. Bachtold told law enforcement that he "had been asleep for several hours" in his bedroom while S.E.A. and Mr. Altus "were watching [TV] in the living room." CP at 23. Mr. Bachtold stated, "[h]e heard a 'pop,' which sounded like a .22 magnum gunshot." CP at 23. He went to the living room where "he saw [S.E.A.] holding the .22 magnum rifle and she had just shot [Mr. Altus]." CP at 23. Mr. Bachtold claimed, "[S.E.A.] was backing up and [Mr. Altus] was coming at her and yelling that she had just shot him." CP at 23. "[S.E.A.] continued to back up around the end of the couch and [Mr. Altus] followed her and [Mr. Altus] and [S.E.A.] were then fighting over the gun." CP at 23. Mr. Bachtold specified that he retrieved the ".410 shotgun" and "went back to where [Mr. Altus] was standing." CP at 23. Mr. Bachtold claimed Mr. Altus then "got down on his knees" and "was asking for help and then said just to shoot him." CP at 23. Mr. Bachtold admitted he "shot [Mr. Altus] in the face with the .410 shotgun. He said [Mr. Altus] was still alive when he shot him." CP at 23. The next morning, Mr. Bachtold detailed how he and S.E.A. "loaded up" Mr. Altus' truck, taking Mr. Altus'

guns, cellphone, and identification, and drove to Oregon where Mr. Bachtold's father resided. CP at 23.

Mr. Bachtold explained "that he shot [Mr. Altus] because [Mr. Altus] was raping [S.E.A.] and had been for a longtime. [Mr. Altus] had also been raping other kids." CP at 23. Mr. Bachtold stated he believed Mr. Altus had raped S.E.A. the morning before the shooting. He declared, "[S.E.A.] was in the bathroom getting ready for school. [Mr. Bachtold] was outside and heard [S.E.A.] screaming. He went in the house and [Mr. Altus] had raped [S.E.A.]." CP at 23. S.E.A. denied being raped by Mr. Altus but claimed he had inappropriately touched her.

The State charged Mr. Bachtold with aggravated murder in the first degree, robbery in the first degree, theft of a motor vehicle, two counts of theft of a firearm, and two counts of unlawful possession of a firearm in the second degree. On May 10, 2016, Mr. Bachtold and the State entered into a written "Plea Agreement." CP at 44-51. In the Plea Agreement, Mr. Bachtold stipulated to his offender score and standard range of confinement for each count. On August 16, 2016, the State filed an amended information, in accordance with the plea agreement, with the only notable modification being an amendment of the charge of aggravated murder in the first degree to murder in the first degree. Mr. Bachtold pleaded guilty to all but the final count of unlawful possession of a firearm in the second degree that was dismissed at sentencing.

4

Mr. Bachtold agreed in his statement on plea of guilty that "[i]nstead of making a statement, [he] agree[s] that the court may review the police reports and/or a statement of probable cause supplied by the prosecution to establish a factual basis for the plea." CP at 61. The judge noted in the statement on plea of guilty "[probable cause] est. 10/16/2024 [Judge Henry Rawson]." CP at 61. The court confirmed this stipulation with Mr. Bachtold and his attorney:

> [COURT:] In Section 11 on page 10, you're asked to make a statement in your own words as to why you're guilty. But instead the box has been checked right here that I might review a police report or a statement of probable cause to establish a factual basis for the plea. And it's your understanding that probable cause has been established in this matter?
>
> [MR. BACHTOLD:] It is.
>
> [DEFENSE:] We would stipulate the probable cause for those charges, Your Honor.
>
> [COURT:] Thank you.
>
> It appears that probable cause was established on October 16th, 2014, is that your understanding?
>
> [MR. BACHTOLD:] It is.

Rep. of Proc. at 29-30.

After accepting Mr. Bachtold's guilty pleas, the court sentenced Mr. Bachtold to 360 months of incarceration on the murder in the first degree conviction. The sentences on the remaining five counts were ordered to run concurrent to the murder sentence. Mr. Bachtold was ordered to pay a VPA and DNA collection fee, among other sanctions.

Mr. Bachtold appeals.

ANALYSIS

VALIDITY OF PLEA TO ROBBERY IN THE FIRST DEGREE

Mr. Bachtold argues his conviction for robbery in the first degree should be vacated because there was an insufficient factual basis to support the charge. He asserts this deficiency constitutes a manifest constitutional error, and his attorney was ineffective for stipulating to an insufficient factual basis.

Under RAP 2.5(a), this court may "refuse to review any claim of error which was not raised in the trial court." However, a party may raise a manifest error affecting a constitutional right for the first time on appeal. RAP 2.5(a)(3). For us to accept review under RAP 2.5(a)(3), Mr. Bachtold must demonstrate that the error is manifest and that the error is truly of constitutional dimension. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).

Mr. Bachtold presents two constitutional issues for the first time on appeal. First, Mr. Bachtold argues his plea was not entered into knowingly and voluntarily because there was an insufficient factual basis for the robbery charge, thereby depriving him of his right to due process. Secondly, Mr. Bachtold claims he was deprived of his Sixth Amendment right to counsel under the United States Constitution when his attorney stipulated to an insufficient factual basis for the robbery charge.

Mr. Bachtold contends the errors are manifest because he was convicted of a crime for which sufficient proof did not exist and the conviction inflated his offender scores on the concurrent offenses. Our analysis of whether the error is manifest necessarily invokes an assessment of the facts. We therefore proceed to the merits of Mr. Bachtold's constitutional challenges.

*Due Process*

The issue of whether a guilty plea is constitutionally valid is reviewed de novo. *State v. Snider*, 199 Wn.2d 435, 444, 508 P.3d 1014 (2022). "Due process requires that a guilty plea must be knowing, intelligent, and voluntary." *State v. Olsen*, 3 Wn.3d 689, 698, 555 P.3d 868 (2024). In determining whether a plea is made knowingly, intelligently, and voluntarily, the court conducts a totality of the circumstances analysis. *Snider*, 199 Wn.2d at 444. "When a defendant pleads guilty after receiving a charging document that accurately describes the elements of the offense charged, their plea is presumed to be knowing, voluntary, and intelligent." *Id.* at 445. A plea is not knowing, intelligent, and voluntary unless the defendant understands the nature of the charge. *State v. Osborne*, 102 Wn.2d 87, 92-93, 684 P.2d 683 (1984).

Mr. Bachtold argues his conviction for robbery in the first degree should be vacated and dismissed because "[t]here are no facts . . . which suggests he used force against Mr. Altus to obtain his property." Appellant's Op. Br. at 14. Specifically, Mr. Bachtold claims the probable cause affidavit stated that Mr. Bachtold employed force

7

against Mr. Altus because of his belief that Mr. Altus had engaged in sexual conduct with

S.E.A., not to obtain or retain Mr. Altus' property.

For a guilty plea to be valid, CrR 4.2(d) mandates the judge accepting a guilty plea

be satisfied there exists a factual basis for the plea, among other factors. A judge does

not have to be convinced beyond a reasonable doubt that the defendant is guilty for a

sufficient factual basis to exist. *State v. Arnold*, 81 Wn. App. 379, 382, 914 P.2d 762

(1996). Rather, "a factual basis exists if the evidence is sufficient for a jury to conclude

that the defendant is guilty." *Id*. The factual basis does not need to be derived from the

defendant's admissions so long as the material relied on by the court is part of the record.

*Osborne*, 102 Wn.2d at 95.

"Robbery" is defined as:

> A person commits robbery when he or she unlawfully takes personal
> property from the person of another or in his or her presence against his or
> her will by the use or threatened use of immediate force, violence, or fear of
> injury to that person or his or her property or the person or property of
> anyone. Such force or fear must be used to obtain or retain possession of
> the property, or to prevent or overcome resistance to the taking; in either of
> which cases the degree of force is immaterial. Such taking constitutes
> robbery whenever it appears that, although the taking was fully completed
> without the knowledge of the person from whom taken, such knowledge
> was prevented by the use of force or fear.

RCW 9A.56.190. A person commits robbery in the first degree if during the

"commission of a robbery or of immediate flight therefrom, he . . . is armed with a deadly

weapon . . . or inflicts bodily injury." RCW 9A.56.200(a)(i), (iii).

8

As a preliminary matter, the purpose behind Mr. Bachtold's use of force against Mr. Altus need not be exclusive. Alternatively stated, Mr. Bachtold may have used force against Mr. Altus due to his belief that Mr. Altus had engaged in sexual conduct with S.E.A. as well as to retain Mr. Altus' property.

In *State v. Handburgh*, the Supreme Court held that "the force necessary to support a robbery conviction need not be used in the initial acquisition of the property. Rather, the retention, via force against the property owner, of property initially taken peaceably *or* outside the presence of the property owner, is robbery." 119 Wn.2d 284, 293, 830 P.2d 641 (1992).

Assuming Mr. Bachtold's stated purpose for the use of force against Mr. Altus is accurate, the affidavit of probable cause also stated that Mr. Bachtold obtained Mr. Altus' firearm, used the firearm to shoot Mr. Altus, and later departed Mr. Altus' home in possession of the firearm. Thus, at minimum, facts exist demonstrating that Mr. Bachtold's use of force against Mr. Altus was employed to retain possession of the firearm he earlier took from Mr. Altus and later used to kill him. The probable cause affidavit contained a sufficient factual basis to support the elements of robbery in the first degree. Mr. Bachtold knowingly, voluntarily, and intelligently pleaded guilty to robbery in the first degree.

*Ineffective Assistance of Counsel*

Mr. Bachtold next contends that he was afforded ineffective assistance of counsel when his attorney stipulated to an insufficient factual basis for the charge of robbery in the first degree.

Defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). Ineffective assistance of counsel claims are reviewed de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

The appellant bears the burden of showing that his attorney's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and, if so, that there is a reasonable probability that but for his attorney's poor performance, the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If either element is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

Here, because we conclude the probable cause affidavit contained a sufficient factual basis to support the charge of robbery in the first degree, Mr. Bachtold's attorney was not ineffective in stipulating to the court relying on the affidavit of probable cause as a factual basis for the plea.

Mr. Bachtold's plea of guilty to the charge of robbery in the first degree is not invalid.

VALIDITY OF GUILTY PLEAS TO THE REMAINING COUNTS

Mr. Bachtold next raises a two-fold argument to the validity of his remaining guilty pleas, contending he did not enter into the pleas knowingly, voluntarily, or intelligently. First, Mr. Bachtold claims the invalid robbery conviction improperly inflated his offender score. Secondly, he asserts that the theft of a motor vehicle conviction should have counted as the same course of conduct as the two convictions for theft of a firearm for purposes of his offender score calculation. We disagree with his first contention and decline review of the second.

*Validity of Robbery in the First Degree Conviction*

Mr. Bachtold argues that because the robbery conviction was invalid for a want of a factual basis, his guilty pleas to the remaining counts were not made knowingly, voluntarily, and intelligently. Specifically, Mr. Bachtold claims that since the robbery charge was invalid, his offender score on the remaining counts was lower. Thus, "[h]e was wrongly informed about the possible criminal penalties which could be imposed for convictions on the other offenses." Appellant's Op. Br. at 20.

As discussed above, because a sufficient factual basis existed to support Mr. Bachtold's guilty plea to robbery, the conviction is valid. Thus, the robbery conviction

was correctly included in his offender scores on the remaining counts. Mr. Bachtold's convictions on the remaining counts are therefore valid.

### Same Criminal Conduct

Although Mr. Bachtold does not assign error to the court's calculation of his offender score, he asserts for the first time on appeal that his offender score was improperly inflated because the theft of a motor vehicle conviction should have counted as the same course of conduct as the two convictions for theft of a firearm.

The burden is on the defendant at sentencing to establish that the current offenses encompass the same criminal conduct. *State v. Jackson*, 28 Wn. App. 2d 654, 664, 538 P.2d 284 (2023), *review denied*, 2 Wn.3d 1027, 544 P.3d 34 (2024). Illegal or erroneous computations of an offender score may generally be raised for the first time on appeal, unless the argument involves a factual or discretionary determination. *State v. Nitsch*, 100 Wn. App. 512, 520, 997 P.2d 1000 (2000). Nevertheless, an appellant waives a challenge to his offender score when he affirmatively agrees to his offender score and standard range sentences. *Id*.

Here, Mr. Bachtold affirmatively agreed to his offender scores and corresponding standard range sentences in a written plea agreement. Consequently, Mr. Bachtold has waived a same course of conduct challenge on appeal.

We decline to review Mr. Bachtold's challenge to his offender score.

VICTIM PENALTY ASSESSMENT AND DNA COLLECTION FEE

Mr. Bachtold argues the VPA and the DNA collection fee should be struck from his sentence due to his indigency. The State concedes. We accept the State's concession and remand for the trial court to strike the VPA and DNA collection fee.

Where the legislature changes the law after sentencing, the court will review a claim of error that relates to the changes. *State v. Ellis*, 27 Wn. App. 2d 1, 17-18, 530 P.3d 1048 (2023), *review granted*, 4 Wn.3d 1009, 564 P.3d 547 (2025). Formerly, RCW 7.68.035(1)(a) imposed a $500 VPA on any adult found guilty of a crime in superior court. On July 1, 2023, an amendment to RCW 7.68.035 went into effect, requiring trial courts to refrain from imposing a penalty assessment if, at the time of sentencing, the defendant was found to be indigent as defined in RCW 10.01.160(3). *See* LAWS OF 2023, ch. 449, §§ 1, 4. Statutory changes to cost statutes apply retroactively. *State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018). The court explicitly found Mr. Bachtold is indigent under RCW 10.01.160(3), therefore we remand for the trial court to strike the VPA as it should not have been imposed.

Additionally, under the former RCW 43.43.7541, a $100 DNA collection fee was required to be imposed. Effective July 1, 2023, the legislature amended the statute and eliminated the mandatory imposition of the DNA collection fee. *See* LAWS OF 2023, ch. 449, § 4. Therefore, the DNA collection fee was wrongfully imposed, and because

statutory changes apply retroactively, we remand for the trial court to strike the DNA

collection fee.

CONCLUSION

We affirm Mr. Bachtold's convictions and remand for the limited purpose of

striking the VPA and DNA collection fee from his judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Staab, A.C.J.

_____
Fearing, J.