# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 45613-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ADAM P. THOMAS, | |
| Appellant. | |

BJORGEN, A.C.J. — Adam P. Thomas appeals his conviction for first degree robbery with a deadly weapon enhancement, arguing that because he consumed his restaurant meal before he threatened his server with a knife, insufficient evidence supports his robbery conviction. We disagree and affirm Thomas's conviction.[1]

### FACTS

Jorge Estrada owns El Presidente Mexican Cantina, a restaurant in Vancouver, Washington. He was waiting tables on August 18, 2013, when Thomas came in for dinner. Thomas ordered a salad and a drink and went outside to smoke a cigarette. During the meal, he left the table, went outside, and returned to his meal approximately three times. This caught

---

[1] This matter was initially considered by a commissioner of this court pursuant to RAP 18.14, and subsequently referred to a panel of judges.

Estrada's attention. When he was halfway through his meal, Thomas again left to smoke. He brought his backpack with him, which caused Estrada to think Thomas was finished eating.

Estrada followed Thomas out the front door and asked for payment for the meal. Thomas handed Estrada a Washington State identification card and a credit card, and Estrada went inside to process the payment. The credit card was declined, so Estrada returned outside to ask Thomas if he had another form of payment. Thomas replied, "I sure do," and pulled out a pocket knife and unfolded it. 1A Verbatim Report of Proceedings at 67. Estrada retreated inside the restaurant and Thomas ran off. Estrada called 911, and police later apprehended Thomas. Thomas admitted leaving the restaurant without paying for his meal, but denied threatening Estrada.

The State charged Thomas with first degree robbery with a deadly weapon enhancement. During trial, Thomas moved to dismiss this charge, arguing that because he had consumed the meal before threatening Estrada and leaving the restaurant, there was insufficient evidence that he used force to obtain or retain possession of the meal. The trial court denied the motion. Thomas requested, and received, a jury instruction on the lesser included offense of third degree theft.[2] The jury found Thomas guilty of first degree robbery and found the deadly weapon enhancement applied. The trial court imposed an 81-month sentence. Thomas appeals.

ANALYSIS

In reviewing an insufficient evidence claim, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the

_____

[2] On the theft charge, the jury was instructed that the definition of "services" includes "restaurant services" and that the State was required to prove the defendant wrongfully obtained the "property or services of another." Supp. Clerk's Papers at 35; *see also* RCW 9A.56.010(15).

elements of the charged crime beyond a reasonable doubt. *State v. Brown*, 162 Wn.2d 422, 428, 173 P.3d 245 (2007). We draw all reasonable inferences from the evidence in the State's favor and most strongly against the defendant. *Brown*, 162 Wn.2d at 428.

To convict Thomas of first degree robbery, the State had to prove beyond a reasonable doubt that he (1) unlawfully took personal property[3] from the person of another, (2) by the use or threatened use of immediate force,[4] and (3) during the commission of the robbery, was (i) armed with a deadly weapon, (ii) displayed what appeared to be a deadly weapon, or (iii) inflicted bodily injury. RCW 9A.56.190, .200(1)(a); *see also* RCW 9.94A.533(4) (deadly weapon sentencing enhancement). Thomas argues that because he had consumed the meal and left the restaurant before displaying a weapon, the evidence is insufficient to support his robbery conviction. *See State v. Hornaday*, 105 Wn.2d 120, 125, 713 P.2d 71 (1986) (superseded by statute) (holding that a minor could not possess alcohol after consuming it). The State responds that Washington's "transactional" analysis of robbery encompasses Thomas's actions. Br. of Resp't at 8.

Under Washington's "transactional" analysis of robbery, the taking of property is "ongoing until the assailant has effected an escape." *State v. Truong*, 168 Wn. App. 529, 535-36, 277 P.3d 74 (2012). The definition of "robbery," thus, includes "violence during flight immediately following the taking." *State v. Manchester*, 57 Wn. App. 765, 770, 790 P.2d 217 (1990); *see also State v. Handburgh*, 119 Wn.2d 284, 287-89, 830 P.2d 641 (1992) (the forceful retention of a

---

[3] "Property" was defined in the instructions as "anything of value, whether tangible or intangible." 1B Verbatim Report of Proceedings at 189.

[4] Pursuant to RCW 9A.56.190, "[s]uch force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial."

stolen bicycle constitutes a robbery); *State v. Robinson*, 73 Wn. App. 851, 856, 872 P.2d 43 (1994) ("Pursuant to [the transactional view of robbery], a robbery can be considered an ongoing offense so that, regardless of whether force was used to obtain property, force used to retain the stolen property or to effect an escape can satisfy the force element of robbery.").

In *Manchester*, for example, the defendant hid cigarettes under his coat and left a store. A guard followed him out of the store and took his arm to escort the defendant back inside. 57 Wn. App. at 766-67. The defendant broke away and displayed a weapon as he left. *Manchester*, 57 Wn. App. at 766-67. The defendant argued that the robbery statute required "that the use of force occur prior to completion of the taking." *Manchester*, 57 Wn. App. at 769. The court rejected his argument:

> The fatal flaw in Manchester's argument is that it ignores the plain language of the statute: "force or fear . . . used to . . . retain possession of the property, or to prevent or overcome resistance to the taking. . . ." In each instance, it is undisputed that Manchester used force to retain at least some of the stolen property. In doing so, his actions fall squarely within the provisions of the statute.

*Manchester*, 57 Wn. App. at 769 (alteration in original).

This transactional analysis, however, has an outer limit. In *State v. Johnson*, relied upon by Thomas, a defendant abandoned stolen property before punching a security guard. 155 Wn.2d 609, 610, 121 P.3d 91 (2005). The *Johnson* court, in reversing the robbery conviction, wrote:

> [T]he force must relate to the taking or retention of the property, either as force used directly in the taking or retention or as force used to prevent or overcome resistance "to the taking." Johnson was not attempting to retain the property when he punched the guard but was attempting to escape after abandoning it.

*Johnson*, 155 Wn.2d at 611. Under *Johnson*, then, the State cannot prove robbery if the force is unrelated "to the taking or retention" of the property or is not "used to prevent or overcome

4

resistance to the taking."[5] *Johnson*, 155 Wn.2d at 611; *see also* RCW 9A.56.190 ("Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.").

Here, unlike in *Johnson*, Thomas's use of force was employed to overcome Estrada's resistance to his taking of a meal for which he did not intend to pay. Unlike the defendant in *Johnson*, Thomas did not abandon the personal property of another (the meal) when he consumed it.[6] Rather, Thomas's act of consuming the meal converted the personal property for his own use. This conversion, or taking, of the personal property then became unlawful when Thomas attempted to leave the restaurant without paying for the meal. Because the State presented evidence that Thomas displayed a knife while trying to prevent Estrada's resistance to his taking of the meal without paying for it, sufficient evidence supported the jury's verdict finding Thomas guilty of

---

[5] Also, the transactional analysis is inapplicable

> [w]hen it is undisputed that the defendant used force to take personal property unlawfully from a person "or in his presence against his will" but used no additional force to retain the property or to effect an escape. . . . Such a taking is the common law form of robbery, codified in the first sentence of RCW 9A.56.190, where force is used to effect the unlawful taking. It is unnecessary in that situation to consider whether any force was used to retain the stolen property or to effect an escape.

*Robinson*, 73 Wn. App. at 857 (robbery was completed when co-defendant grabbed victim's purse after a struggle and walked away).

[6] Thomas asserts in his supplemental brief that, because the robbery statute requires the unlawful taking of "personal property," his taking of restaurant services cannot form the basis for his first degree robbery conviction. RCW 9A.56.190. However, even though "services" is defined by RCW 9A.56.010(15) to include "restaurant services," Thomas's consumption of the meal also constituted a taking of personal property, in addition to a taking of restaurant services. Thus, we need not decide in this appeal whether a defendant commits robbery when taking a pure service.

No. 45613-3-II

first degree robbery. Accordingly, we affirm Thomas's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, A.C.J.

We concur:

MAXA, J.

LEE, J.

6