IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74262-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RYAN BRETT JOHNSON, | ) | |
| | ) | |
| Appellant. | ) | FILED: May 1, 2017 |

SCHINDLER, J. — A jury convicted Ryan Brett Johnson of burglary in the first degree, robbery in the first degree, and assault in the second degree. We affirm the jury verdict. But because the merger doctrine applies to the convictions for robbery in the first degree and assault in the second degree, we remand for resentencing.

FACTS

Anthony Williams lived with his father on the Tulalip Indian Reservation. Williams' bedroom was located on the first floor of the house just off the living room. Beginning sometime in 2013, Williams' cousin Tashina Kona moved in and paid rent to live in a bedroom in the basement.

In December 2014, Williams' father went on a trip to the Philippines. After he left, Kona drove his truck. On December 30, Williams posted a comment on Facebook about Kona taking his father's truck. In response to the Facebook post, an uncle in

Oregon called Kona asking her about why she was driving the truck. Kona was angry at Williams about the Facebook post.

On New Year's Eve, Williams went to the Tulalip Resort Casino with several friends. After Williams won $2,500, he left. Williams arrived home between 2:00 and 2:30 a.m. Williams closed the door to his bedroom and went to sleep.

Kona arrived at the house at approximately 5:00 a.m. Kona saw a tax form for the money Williams won on the kitchen counter. Kona decided to "get even" with Williams for the Facebook post. Kona called Billy Jo Arnold. Kona told Arnold that Williams had won a $2,500 jackpot and asked Arnold to come to the house and "take it" from Williams. Arnold told Kona, "I'm on my way."

When Kona called Arnold, he was at his house with his girlfriend Danielle Garner, Ryan Brett Johnson, and Johnson's girlfriend Ami Lyons. After the call from Kona, Arnold, Johnson, and Lyons left. When they arrived at Williams' house in a red Ford Explorer, Kona came outside. Kona showed Arnold a photograph on her cell phone of the tax form for the gambling winnings. Kona told Arnold the front door was unlocked. Kona described the location of Williams' bedroom. On the way into the house, Johnson picked up a two-inch by three-foot piece of wood that he found in the driveway. Johnson handed the piece of wood to Arnold.

Before entering the house, Arnold and Johnson put on scarves to cover their faces. Arnold and Johnson "barged" through the door and into Williams' bedroom. Arnold told Williams, "I know you won money." Arnold demanded Williams hand over his wallet. Williams gave his wallet to Johnson. Johnson removed the money from the wallet and took Williams' cell phone. Before leaving, Arnold "bashed" Williams on the

2

head with the two-inch by three-foot piece of wood.

Williams ran to his sister's house. Williams had a "3-inch gash" on his head and was bleeding "pretty heavily." Williams' sister called 911 and the Tulalip Tribal Police. Paramedics took Williams to the hospital. The doctors had to use 11 staples to close the head wound.

Meanwhile, Kona tried to reach Arnold. Kona called Johnson on his cell phone to talk to Arnold. Kona asked Arnold "what happened." Arnold told her he hit Williams "in the head" and "got out of there." Arnold told Kona he would call her later. At approximately 7:30 a.m., Arnold, Johnson, and Lyons went to the Angel of the Winds Casino to gamble with the $2,500.

Tulalip Tribal Police Detective David Sallee investigated the robbery. Detective Sallee obtained a search warrant from the Tulalip Tribal Court for Kona's cell phone. On January 6, Detective Sallee executed the warrant and seized Kona's cell phone. Because "everything prior to January 2nd had already been deleted," Detective Sallee obtained a search warrant for the cell phone records. On January 22, Sprint produced the cell phone records. The records showed Kona called and sent text messages multiple times near the time of the robbery to (425) 268-5584 and (509) 631-2672. Detective Sallee knew the number (425) 268-5584 belonged to Arnold but did not recognize the (509) 631-2672 number.

Detective Sallee conducted a Google Internet search using the number (509) 631-2672. The "Google . . . task bar . . . ended up popping up to Ryan Johnson's Facebook . . . page and was listed under his personal information as his contact number." Detective Sallee also used the LexisNexis police database to search for the

3

number (509) 631-2672. The database showed the number was associated with "Ryan Johnson."

On January 23, Detective Sallee requested a search warrant from the Tulalip Tribal Court for "[a]ll records that include the date December 31st 2014 through January 2nd 2015 for number 509-631-2672." In the affidavit of probable cause, Detective Sallee states he believed the number (509) 631-2672 belonged to Ryan Johnson.[1]

The Tulalip Tribal Court issued the search warrant on January 23. The search warrant states the cell phone records are located in Texas and authorizes the search and seizure of the cell phone records.[2]

On February 6, the AT&T subpoena compliance center in Dallas, Texas, produced the cell phone records for the number (509) 631-2672. The records did not identify the owner of the number.

The State charged Arnold and Johnson with robbery in the first degree. Arnold pleaded guilty and agreed to testify. The State filed an amended information charging Johnson with burglary in the first degree in violation of RCW 9A.52.020, robbery in the first degree in violation of RCW 9A.56.200, and assault in the second degree while armed with a deadly weapon in violation of RCW 9A.36.021(1)(a) and RCW

---

[1] The affidavit of probable cause states, in pertinent part:

I searched the internet using this number 509-631-2672 and it directed me to the Face Book account for Ryan B Johnson (DOB 01-20-1981). I recognized the photo of JOHNSON from my previous case and also recognized a photo he had posted of his 1999 red Ford Explorer.

[2] The search warrant states, in pertinent part:

**Location:** in the cell phone records of cell phone number 509-631-2672 belonging to Ryan B Johnson DOB 01-20-1981 located in the New Cingular Wireless/AT&T subpoena compliance center 208 S Akard St. 10th floor M Dallas Texas 75202.

> **Search and Seize** This "Search Warrant" shall be to seize and search the above listed phone number records for text messages, photos, call logs, text logs, voice mails, emails and cell tower locations "pings" for the dates of 12-31-2014 through 01-02-2015.

4

9.94A.533(4) and .825.

Johnson filed a motion to suppress the evidence obtained from the search warrant issued by the Tulalip Tribal Court to the AT&T subpoena compliance center in Dallas for the number (509) 631-2672. Johnson argued the Tulalip Tribal Court did not have jurisdiction to issue a search warrant for cell phone records stored outside Washington. The court denied the motion.

Williams, Kona, Arnold, Garner, Detective Sallee, and Sprint records custodian Desiree Hannen testified during the four-day jury trial. The State did not introduce the AT&T phone records into evidence.

Williams testified that he and Kona did not "really get along." Williams said Kona was "into the whole drug scene" and did not pay rent "very often."

Williams testified that he did not see the faces of the men who robbed him because they "had scarves on." Williams testified that he did not know Johnson and he did not give Johnson "or anybody else" permission to enter his bedroom. Williams told the jury that after he gave the men his wallet, one of the men "bashed" him on the head.

Kona testified that she and Williams did not get along and "didn't see eye to eye from the beginning." Kona testified that Arnold arrived at the house with another man and a female in a "red SUV[3]." Kona admitted unlocking the front door and turning off the porch light to "facilitate" the robbery. According to Kona, she could not "definitively state" Johnson was the man with Arnold, but he looked "[s]imilar."

Arnold testified that he spent New Year's Eve 2014 with his girlfriend Garner, Johnson, and Johnson's girlfriend Ami Lyons "getting high" on heroin and methamphetamine. Arnold said Kona called at approximately 5:00 a.m. on January 1

---

[3] Sport-utility vehicle.

and told him Williams "had some money and for us to take it." Arnold testified that he left with Johnson and Lyons and drove to Williams' house in Johnson's red Ford Explorer.

Arnold admitted he was armed with a weapon. Arnold testified that before entering the house, Johnson picked up a two-inch by three-foot piece of wood from the driveway and handed it to him. After entering the house, they went to Williams' bedroom. Arnold said Johnson opened the bedroom door and turned on the lights. Arnold testified that after Williams handed over his wallet, Johnson took the money out of the wallet. Arnold admitted he hit Williams on the head with the two-inch by three-foot piece of wood. After the robbery, Arnold, Johnson, and Lyons drove to the Angel of the Winds Casino in the Ford Explorer and "[b]lew" the money "[a]s fast as [they] could get rid of it." The court admitted into evidence a photograph from the casino. Arnold identified the two men in the photo as Johnson and himself. Arnold testified the number (509) 631-2672 belonged to Johnson.

Arnold's girlfriend Garner testified that she spent New Year's Eve with Arnold, Lyons, and Lyons' boyfriend. Garner testified that after Arnold received a call early the next morning, he said he "needed a ride to go rob somebody." Garner testified Lyons and her boyfriend left with Arnold in a red SUV.

Sprint records custodian Desiree Hannen testified and the court admitted into evidence copies of Kona's Sprint cell phone records. The cell phone records show that near the time of the robbery, Kona made multiple calls to and received multiple calls from (509) 631-2672. The records also show that on January 1, Kona exchanged multiple text messages with the cell phone number (509) 631-2672.

Detective Sallee testified that when he performed a Google Internet search for the number (509) 631-2672, a Facebook page for "Ryan Johnson" "popp[ed] up." Detective Sallee testified the Facebook page contained photographs that "match[ed] the defendant" and a photograph of a "red Ford Explorer that matched the description of the vehicle used in the robbery."

Detective Sallee also testified that a LexisNexis database search for the number (509) 631-2672 showed the number was connected to "Ryan Johnson" and a social security number.

Q    Did you type this number into any other search engines?
A    I did.
Q    And what search engine is that, sir?
A    Police database called LexisNexis.
Q    And what specific information did you type into the search engine?
A    The phone number, (509) 631-2672.
Q    And did a name come up associated with this number?
A    Yes.  One name came up which was Ryan Johnson.
Q    Was there any identifying information associated with the name of Ryan Johnson?
A    Yes.  There was a social security number associated.

Detective Sallee testified that he confirmed the social security number belonged to Johnson.

Q    And did you recognize the social security number?
A    I verified it through dispatch.  I had dispatch run his name and date of birth and verified the social security number was the same.
Q    The same as whose?
A    As Ryan Johnson, the defendant.

Detective Sallee testified the AT&T cell phone records for the number (509) 631-2672 did not "indicate they belonged to anyone in specific" and had no "name attached." The court admitted into evidence a copy of a surveillance video from the Angel of the Winds Casino as an exhibit.  The State played the casino surveillance video for the jury.

The video shows Johnson entering the casino with Arnold and Lyons at approximately 7:30 a.m.

The jury found Johnson guilty of burglary in the first degree, robbery in the first degree, and assault in the second degree. By special verdict, the jury found Johnson was armed with a deadly weapon.

At sentencing, the court rejected the argument that the robbery and assault convictions constituted the same criminal conduct or that the merger doctrine applied. The court sentenced Johnson to 135 months of confinement.

## ANALYSIS

### AT&T Cell Phone Records

For the first time on appeal, Johnson asserts the Tulalip Tribal Court did not have the authority to issue a search warrant to obtain the AT&T cell phone records for a nontribal member. Even if the Tulalip Tribal Court did not have the authority to issue the search warrant, we conclude the admission of evidence obtained from AT&T was harmless beyond a reasonable doubt.

The failure to suppress evidence obtained in violation of the Fourth Amendment and article 1, section 7 is presumed prejudicial. U.S. CONST. amend IV; WASH. CONST. art. 1 § 7; State v. McReynolds, 117 Wn. App. 309, 326, 71 P.3d 663 (2003). The State bears the burden of showing constitutional error is harmless beyond a reasonable doubt. State v. Easter, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996). Constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that "the jury verdict cannot be attributed to the error." State v. Lui, 179 Wn.2d 457, 495, 315 P.3d 493 (2014); State v. Brown, 147 Wn.2d 330, 341, 58 P.3d 889 (2002); Easter, 130

Wn.2d at 242. Under the "overwhelming untainted evidence" test, the appellate court looks at only the untainted evidence to determine if the evidence is so overwhelming that it necessarily leads to a finding of guilt. State v. Guloy, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985).

Here, there was scant evidence about the AT&T cell phone records. We conclude beyond a reasonable doubt that there was overwhelming untainted evidence of Johnson's guilt and the jury would have reached the same result absent the AT&T cell phone record evidence.

Kona admitted she called Arnold about the jackpot Williams won and asked him to come to the house and rob Williams. Arnold and Garner testified that Arnold left with Johnson and Lyons in a red Ford Explorer to go rob someone.

Arnold testified he was armed with a weapon when he and Johnson entered the house wearing scarves. Arnold testified that they went into Williams' bedroom and committed robbery. Arnold testified that after the robbery, he, Johnson, and Lyons went to the Angel of the Winds Casino and spent the money stolen from Williams. Surveillance video admitted at trial shows Johnson entering the casino with Arnold shortly after the robbery.

Williams testified two men "barged" into his bedroom. Williams testified one of the men was holding "[a] 2-x-4, some kind of stick." The men demanded his wallet and took the money out of his wallet and his cell phone. Williams testified that before both men ran away, one man hit him over the head with the piece of wood resulting in a wound that required 11 staples.

Johnson did not object to the admission of Kona's cell phone records. The cell phone records show Kona exchanged multiple calls and text messages with the number (509) 631-2672 near the time of the robbery. Detective Sallee testified that during a Google search for the number (509) 631-2672, Johnson's Facebook page appeared with pictures of Johnson and a red Ford Explorer matching the description of the vehicle used in the robbery. The LexisNexis search for the number (509) 631-2672 returned the name "Ryan Johnson" and a social security number that matched Johnson's social security number. Arnold also testified the (509) 631-2672 cell phone number belonged to Johnson.

Evidentiary Rulings

Johnson claims the court erred in admitting Detective Sallee's testimony about Facebook because the State did not establish the Facebook page belonged to Johnson. The State contends Johnson waived this argument by not moving to strike the testimony. The record supports the State's argument.

We review evidentiary rulings for abuse of discretion. State v. Garcia, 179 Wn.2d 828, 846, 318 P.3d 266 (2014). " 'A trial court abuses its discretion if its decision is manifestly unreasonable or based upon untenable grounds or reasons.' " Garcia, 179 Wn.2d at 846 (quoting State v. Lamb, 175 Wn.2d 121, 127, 285 P.3d 27 (2012)).

Under ER 103(a)(1), "[e]rror may not be predicated upon a ruling which admits . . . evidence unless . . . a timely objection or motion to strike is made, stating the specific ground of objection." In general, an objection to testimony "must be made when testimony is offered and an objection to a question after it has been answered comes too late." State v. Jones, 70 Wn.2d 591, 597, 424 P.2d 665 (1967). But "[e]ven if . . . an

objection to a question already answered is timely, it will not be considered unless accompanied by a motion to strike." State v. Richard, 4 Wn. App. 415, 428, 482 P.2d 343 (1971); Jones, 70 Wn.2d 597-98; State v. Delaney, 161 Wash. 614, 620, 297 P. 208 (1931). Here, the record shows Johnson did not move to strike Detective Sallee's testimony about the Facebook post.

Without objection, Detective Sallee testified that when he performed a Google Internet search for the cell phone number (509) 631-2672, a Facebook page belonging to Johnson appeared with photographs of Johnson. The prosecutor asked whether Detective Sallee "notice[d] any other pictures of interest." The defense objected to the question as hearsay. The court overruled the objection. Detective Sallee then testified there "was a picture of a red Ford Explorer that matched the description of the vehicle used in the robbery."

Outside the presence of the jury, Johnson argued the State "had to authenticate that that page actually belonged to the person that the State was saying it belonged to." The court reserved ruling on the objection, "All right. I'm going to reserve ruling on the issue. The objection that was raised before the jury was excluded was a hearsay objection, not an objection based on a lack of authentication." The court ruled that subject to other testimony, the court would exclude evidence "about a truck that belongs to [Johnson] having been posted . . . insofar as it is offered for the purpose of showing that this is information that Mr. Johnson posted to his Facebook . . . page."

> The information about a truck that belongs to him having been posted may be relevant and admissible, but I think as long as there's other evidence with respect to the suspect vehicle that the officer's able to testify, or that other witnesses can testify to for now.

I think I will exclude that evidence insofar as it is offered for the purpose of showing that this is information that Mr. Johnson posted to his Facebook . . . page.

In response, the prosecutor pointed out that the "information that Detective Sallee has already testified to and is already in front of the jury is he did see a picture of interest which was a red Ford Explorer." Johnson did not move to strike the Facebook testimony and the court did not instruct the jury to disregard that testimony.

Johnson also claims the court erred in allowing Detective Sallee to testify about the results of the LexisNexis database search under ER 901(b).[4] Johnson asserts the State did not establish that the search produced an accurate result.[5] "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." ER 901(a).

The court held a hearing on the admissibility of the LexisNexis search. Detective Sallee testified that LexisNexis was a database that "police agencies across the country" can access. Detective Sallee described the database as "a search engine tool to locate people." Detective Sallee testified that in his experience, LexisNexis was "very reliable." As an offer of proof, the prosecutor also told the court that Detective Sallee would also testify that the search for the (509) 631-2672 number identified a social security number, that Detective Sallee had "previous knowledge" of Johnson's social

---

[4] ER 901(b)(9) states a "Process or System" may be authenticated with evidence "describing a process or system used to produce a result and showing that the process or system produces an accurate result."

[5] We note the ER 901 authentication requirement is a condition precedent to admissibility of exhibits, not live testimony. 5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 900.3, at 280 (6th ed. 2016) ("The rules in Article 9 are designed primarily for the authentication of demonstrative evidence . . . and the identification of voices."). The court did not admit any exhibits regarding Detective Sallee's LexisNexis search. In any event, the State presented evidence showing LexisNexis produced accurate results.

security number, and that the social security number returned by the search matched Johnson's social security number.

The court ruled Detective Sallee could testify that the search of the LexisNexis database returned Johnson's name and social security number but Detective Sallee could not testify that "the phone number belonged to the defendant." Because the record supports the determination that LexisNexis produced accurate results, the court did not abuse its discretion in allowing Detective Sallee to testify about the results of the LexisNexis search.

## Sufficiency of the Evidence of Burglary in the First Degree

Johnson argues insufficient evidence supports his conviction for burglary in the first degree in violation of RCW 9A.52.020.

The State has the burden of proving the elements of a crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Borrero, 147 Wn.2d 353, 364, 58 P.3d 245 (2002). Under the Fourteenth Amendment and the Sixth Amendment to the United States Constitution and article I, sections 21 and 22 of the Washington State Constitution, a criminal defendant is entitled to " 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " Apprendi v. New Jersey, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)[6] (quoting United States v. Gaudin, 515 U.S. 506, 510, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995)); State v. Polo, 169 Wn. App. 750, 762-63, 282 P.3d 1116 (2012); State v. Johnson, 185 Wn. App. 655, 666, 342 P.3d 338 (2015).

---

[6] Alteration in original.

In reviewing a sufficiency of the evidence claim, we view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014); State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A challenge to the sufficiency of the evidence admits the truth of the evidence. Witherspoon, 180 Wn.2d at 883. Circumstantial evidence and direct evidence are equally reliable. State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." Salinas, 119 Wn.2d at 201. We defer to the trier of fact on "issues of witness credibility." Witherspoon, 180 Wn.2d at 883.

Johnson asserts the State did not prove the essential element of unlawfully entering or remaining because Kona invited him into the house. To convict Johnson of burglary in the first degree in violation of RCW 9A.52.020, the State had the burden of proving beyond a reasonable doubt that Johnson entered or remained unlawfully in Williams' house. RCW 9A.52.020(1) states:

> A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person.

"A person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(2).[7] If a person, " 'being lawfully in a house, enters a room which he has no

---

[7] The legislature amended RCW 9A.52.010 in 2016. Laws of 2016, ch. 164, § 12. Because the amendments do not change the language quoted above, we cite the current statute.

right to enter, with felonious intent, by breaking or opening an inner door, it is as much burglary as if he had entered by breaking an outer door or window.' " State v. Rio, 38 Wn.2d 446, 451, 230 P.2d 308 (1951) (quoting former 12 C.J.S. BURGLARY § 6, at 671); State v. Thomson, 71 Wn. App. 634, 639 n.3, 861 P.2d 492 (1993). "Only the person who resides in or otherwise has authority over the property may grant permission to enter or remain." State v. J.P., 130 Wn. App. 887, 892, 125 P.3d 215 (2005). The trier of fact may infer a limitation on "the privilege to be on the premises . . . from the circumstances of the case." State v. Collins, 110 Wn.2d 253, 261, 751 P.2d 837 (1988).

Johnson asserts there is no evidence he exceeded the scope of Kona's invitation to enter the house. We disagree. Williams and Kona lived in separate bedrooms and did not "get along." Kona paid rent to live in a bedroom in the basement. The evidence showed the only areas of the house Kona had access to were her bedroom and the "community area[s]." There is no evidence that Kona had the right to give Johnson and Arnold permission to enter Williams' bedroom. And the undisputed evidence shows the bedroom door was closed when Arnold and Johnson entered the house and "barged" into his bedroom. Williams testified he did not give Johnson "or anybody else" permission to enter his bedroom. Viewing the evidence and all reasonable inferences in the light most favorable to the State, a jury could reasonably find that Johnson and Arnold unlawfully entered or remained in Williams' bedroom.

State v. Wilson, 136 Wn. App. 596, 150 P.3d 144 (2007), is distinguishable. In Wilson, a no-contact order prohibited Wilson from having contact with his girlfriend and they shared a house together, but the order did not prohibit Wilson from "entering and

15

remaining" at the residence or from coming within a specified distance of the residence. Wilson, 136 Wn. App. at 603-04.

Double Jeopardy

In the alternative, Johnson contends the convictions for robbery in the first degree and assault in the second degree violate double jeopardy. We agree.

The double jeopardy clause of the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington State Constitution bar the court from entering multiple convictions for the same offense.[8] In re Pers. Restraint of Francis, 170 Wn.2d 517, 523, 242 P.3d 866 (2010); State v. Womac, 160 Wn.2d 643, 650-51, 160 P.3d 40 (2007). Whether convictions violate double jeopardy is a question of law we review de novo. State v. Freeman, 153 Wn.2d 765, 770, 108 P.3d 753 (2005); Francis, 170 Wn.2d at 523. The dispositive question in analyzing whether two convictions violate double jeopardy is whether the legislature intended multiple punishments. State v. Calle, 125 Wn.2d 769, 776, 888 P.2d 155 (1995); Francis, 170 Wn.2d at 523.

"Under the merger doctrine, when the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime." Freeman, 153 Wn.2d at 772-73. We "focus[ ] on the manner in which the offenses are charged and proved in a particular case and ask[ ] whether the State was required to prove the

---

[8] The state and federal double jeopardy clauses provide the same protections. In re Pers. Restraint of Orange, 152 Wn.2d 795, 815, 100 P.3d 291 (2004).

act constituting the merging crime to elevate the other crime." State v. Davis, 177 Wn. App. 454, 463, 311 P.3d 1278 (2013).

> Considering the evidence, arguments, and instructions, if it is not clear that it was "manifestly apparent to the jury that the State [was] not seeking to impose multiple punishments for the same offense" and that each count was based on a separate act, there is a double jeopardy violation.

State v. Mutch, 171 Wn.2d 646, 664, 254 P.3d 803 (2011)[9] (quoting State v. Berg, 147 Wn. App. 923, 931, 198 P.3d 529 (2008)). Although the double jeopardy analysis requires a case-by-case approach, convictions for robbery in the first degree and assault in the second degree generally "will merge unless they have an independent purpose or effect." Freeman, 153 Wn.2d at 780; see Francis, 170 Wn.2d at 524.

The court instructed the jury that to-convict Johnson of robbery in the first degree, the State must prove beyond a reasonable doubt that Johnson or an accomplice was (1) armed with a deadly weapon or (2) inflicted bodily injury.[10] The court instructed the jury that to convict Johnson of assault in the second degree, the

---

[9] Emphasis and alteration in original.

[10] Jury instruction 7 states, in pertinent part:

To convict the defendant of the crime of robbery in the first degree, each of the following six elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about the 1st day of January, 2015, the defendant, or a person to whom the defendant was an accomplice, unlawfully took personal property from the person or in the presence of another;
(2) That the defendant, or a person to whom the defendant was an accomplice, intended to commit theft of the property;
(3) That the taking was against the person's will by the defendant's, or a person to whom the defendant was an accomplice, use or threatened use of immediate force, violence, or fear of injury to that person;
(4) That force or fear was used by the defendant, or a person to whom the defendant was an accomplice, to obtain or retain possession of the property or to prevent or overcome resistance to the taking;
(5)(a) That in the commission of these acts, or in immediate flight therefrom, the defendant, or a person to whom the defendant was an accomplice, was armed with a deadly weapon or
(b) That in the commission of these acts or in the immediate flight therefrom the defendant, or a person to whom the defendant was an accomplice, inflicted bodily injury; and
(6) That any of these acts occurred in the State of Washington.

State must prove beyond a reasonable doubt that Johnson or an accomplice "assaulted Anthony Williams and thereby recklessly inflicted substantial bodily harm."

The State presented evidence to support the conviction for robbery in the first degree under both the armed with a deadly weapon and the infliction of bodily injury prongs of the statute. The State concedes the special verdict form does not show whether the jury convicted on the deadly weapon alternative rather than infliction of bodily harm. The merger doctrine applies where it was "unclear from the jury's verdict whether the assault was used to elevate the robbery to first degree." State v. Kier, 164 Wn.2d 798, 812-13, 194 P.3d 212 (2008).

The State argues the exception to the merger doctrine for acts with an "independent purpose or effect" applies.[11] Under the exception, "offenses may in fact be separate when there is a separate injury to 'the person or property of the victim or others, which is separate and distinct from and not merely incidental to the crime of which it forms an element.' " Freeman, 153 Wn.2d at 778-79 (quoting State v. Frohs, 83 Wn. App. 803, 807, 924 P.2d 384 (1996)). This exception allows "two convictions even when they formally appear to be the same crime under other tests." Freeman, 153 Wn.2d at 778.

The State argues that as in State v. Knight, 176 Wn. App. 936, 309 P.3d 776 (2013), the robbery and assault charges are "completely separate" because Johnson had already taken the money from Williams' wallet when Arnold hit Williams on the head with the two-inch by three-foot piece of wood. But unlike in Knight, Williams testified that Arnold "bashed" him on the head during the robbery—"They took the money out, and then that's when they dropped my wallet on the ground. And then that's when he

---

[11] Freeman, 153 Wn.2d at 780.

bashed me upside the head." Williams also testified that Johnson and Arnold "ran" after Arnold hit him on the head.

Under Washington law, "[t]he taking is ongoing until the assailant has effected an escape," and therefore, the definition of "robbery" includes " 'violence during flight immediately following the taking.' " State v. Truong, 168 Wn. App. 529, 535-36, 277 P.3d 74 (2012) (quoting State v. Manchester, 57 Wn. App. 765, 770, 790 P.2d 217 (1990)); State v. Thomas, 192 Wn. App. 721, 725, 371 P.3d 58 (2016). We conclude the conviction for assault in the second degree merged with the conviction for robbery in the first degree and violated double jeopardy.

We affirm the jury verdict but remand for resentencing.

WE CONCUR: